[Crim. No. 22299. First Dist., Div. Three. Feb. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY RAY WILLIAMS et al., Defendants and Appellants.

982

COUNSEL

Ernest Krause, under appointment by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Herbert F. Wilkinson and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SCOTT, J.—Johnny Ray Williams and David Stone appeal from judgments entered after a jury convicted them of burglary (Pen. Code, § 459). Appellants contend that the court erred when it (1) admitted into evidence a conversation recorded while they sat, under arrest, in a police car; (2) ruled that appellant Williams' robbery prior was admissible for impeachment purposes; and (3) granted the prosecutor's midtrial motion to amend the information. Appellants also contend the prosecutor committed misconduct and their trial counsels were incompetent. We affirm the judgments.

### The Facts

Shortly after midnight, Linda Heath was in the upstairs bedroom of her townhouse. She heard something rustling in her backyard, and a metallic scratching at her living room window. Believing someone was trying to break in, she called police.

At the police dispatcher's request, she remained on the line until he told her that police had arrived, and instructed her to let them in. As she went downstairs, she could still hear the metallic scratching. When she opened the door, she saw no one. She quietly closed it, and went back upstairs. The dispatcher then assured her the police had now arrived, and again told her to open the door. As she passed the lighted living room, she saw someone's leg and foot coming through the window. She quickly opened and slammed the door, and ran back upstairs.

At about that time, police officers arrived. As they approached the apartment, they saw the door open and slam shut. Because they be-

lieved that the person inside was the intruder who would attempt to flee, they took positions in the yard. One officer jumped on top of a fence to gain access to the backyard. He saw appellants crawl out the window. He yelled, "Halt," but they fled across the yard. Within minutes, two deputies found appellant Stone crouched in some nearby bushes; another officer found appellant Williams hiding in a neighbor's yard. The two were placed in the back seat of a patrol car, where their conversation was recorded with a tape recorder which one deputy had left on the front seat. When asked why he left the tape recorder on, the deputy replied, ". . . to strengthen the case we had." Appellants discussed their efforts to hide, their capture, the effect of the incident on their probation, the possible penalties each faced, and what they would say to police. The tape was played for the jury.

Appellant Williams did not testify. Appellant Stone testified that although the two men were together that night, he alone tried to burglarize Heath's home. He tried to force open the window in order to steal money, jewelry, or stereo equipment; he denied that he actually entered the apartment.

### Admissibility of the Taped Conversation

Appellants attack the admissibility into evidence of their recorded conversation on numerous grounds. First, they contend the trial court should have granted their motion to suppress the tapes in its entirety, because it violated their right to privacy as guaranteed by article I, section 1 of the California Constitution.[1] Appellants contend that the state was required to show a compelling interest in order to justify any infringement of their privacy rights, and that the gathering of evidence is not such a compelling interest. Appellants acknowledge *People* v. *Newton* (1974) 42 Cal.App.3d 292 [116 Cal.Rptr. 690], cert. den., 420 U.S. 937 [43 L.Ed.2d 414, 95 S.Ct. 1147] and *People* v. *Todd* (1972) 26 Cal.App.3d 15 [102 Cal.Rptr. 539], which held that individuals who had been arrested and placed in the rear of a patrol car had no reasonable expectation of privacy while so confined, and that the recording of their conversations while in the car did not violate their constitutional rights to privacy. (*Newton, supra,* 41 Cal.App.3d at p. 296; *Todd, su-*

---

[1]In 1972, California voters amended article I, section 1 to include among the various "inalienable" rights the right of privacy. The amendment was reworded in November 1974. (*White* v. *Davis* (1975) 13 Cal.3d 757, 773, fn. 9 [120 Cal.Rptr. 94, 533 P.2d 222].)

*pra*, 26 Cal.App.3d at p. 17.)[2] Appellants characterize *Newton* and *Todd* as Fourth Amendment cases, however, and contend that a different result is required by California's privacy amendment.

The California Supreme Court has consistently declared that in determining whether an illegal search has occurred under article I, section 13 of our Constitution, the appropriate test is whether a person has exhibited a reasonable expectation of privacy, and *if so*, whether that expectation has been violated by unreasonable governmental intrusion. (*People* v. *Blair* (1979) 25 Cal.3d 640, 646, 651-652 [159 Cal.Rptr. 818, 602 P.2d 738]; *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 243 [118 Cal.Rptr. 166, 529 P.2d 590]; *People* v. *Hill* (1974) 12 Cal.3d 731, 764 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Triggs* (1973) 8 Cal.3d 884, 891 [106 Cal.Rptr. 408, 506 P.2d 232], disapproved on other grounds in *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 4 [150 Cal.Rptr. 910, 587 P.2d 706]; *North* v. *Superior Court* (1972) 8 Cal.3d 301, 308 [104 Cal.Rptr. 833, 502 P.2d 1305]; see also *In re Deborah C.* (1981) 30 Cal.3d 125, 136 [177 Cal.Rptr. 852, 635 P.2d 446].) In contrast, when generally discussing the right of privacy declared in article I, section 1, the court has also said that intrusion into that right must be justified by a "compelling interest." (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 864 [132 Cal.Rptr. 464, 553 P.2d 624], cert. den., 429 U.S. 1109 [51 L.Ed.2d 562, 97 S.Ct. 1143]; *White* v. *Davis, supra,* 13 Cal.3d at p. 775.) The interface between these two analytical frameworks has yet to be definitively explained by the Supreme Court.[3] (See Kornhauser, *Privacy: The New Constitutional Language and the Old Right* (1976) 64 Cal.L.Rev. 347.) In that regard, in the context of a conversation between two arrestees recorded in a police station interview room, this court has concluded that the distinction between what is "reasonable" under the Fourth Amendment and what is "compelling" under article I, section 1, is nonexistent. (*People* v. *Owens* (1980) 112 Cal.App.3d 441, 448 [169 Cal.Rptr. 359]; but see conc. opn. by White, P. J., at p. 450.)

---

[2]Relying on *Newton*, the court in *People* v. *Jardine* (1981) 116 Cal.App.3d 907 [172 Cal.Rptr. 408] recently reached the same conclusion. (*Id.,* at p. 914.) It is unclear, however, whether the court considered the question raised by appellants here.

[3]We note that the Supreme Court is presently considering cases involving the privacy rights of jail inmates. (*People* v. *Maxie* (Crim. 21556, hg. granted July 16, 1980); *Robinson* v. *Superior Court* (S.F. 24185, hg. granted June 25, 1980); *De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865 [83 Cal.Rptr. 866, 647 P.2d 142].) We anticipate that the court's decisions in these cases will clarify the relationship between the two tests.

However, we need not explore that distinction in this case, because we believe that the constitutional amendment did not alter the fundamental rule that an individual's expectation of privacy must be objectively reasonable before he can complain of any intrusion. (*People* v. *Dominguez* (1981) 121 Cal.App.3d 481, 505 [175 Cal.Rptr. 445]; *People* v. *Estrada* (1979) 93 Cal.App.3d 76, 98 [155 Cal.Rptr. 731]; see *Armenta* v. *Superior Court* (1976) 61 Cal.App.3d 584, 588 [132 Cal.Rptr. 586]; see also *In re Deborah C., supra*, 30 Cal.3d at p. 135.) ■ Accordingly, we conclude that appellants had no objectively reasonable expectation of privacy when they conversed in the back seat of the patrol car after being taken into custody.[4] (*People* v. *Jardine, supra*, 116 Cal.App.3d 907; *People* v. *Newton, supra*, 42 Cal.App.3d 292, and *People* v. *Todd, supra*, 26 Cal.App.3d 15.) The motion to suppress was properly denied.

■ Appellants then contend that the admission of the tape violated the rule stated in *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], because in it, each made statements incriminating the other. Appellants' reliance on *Aranda* is misplaced. That case involves the admissibility of an extrajudicial statement of one defendant *made to a third party* and implicating a codefendant. The extrajudicial statement here is a conversation *between the two codefendants*, and was admissible against each under the adoptive admission exception to the hearsay rule. (Evid. Code, § 1221; *People* v. *Preston* (1973) 9 Cal.3d 308, 313-314 [107 Cal.Rptr. 300, 508 P.2d 300]; *People* v. *Osuna* (1969) 70 Cal.2d 759, 765 [76 Cal.Rptr. 462, 452 P.2d 678].)

Appellants also contend that the taped statement was admitted in violation of their *Miranda* rights, a contention utterly without merit. The procedural safeguards set forth in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] come into play only where custodial interrogation is involved. Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody. Absent evidence of complicity on the part of law enforcement officers, the admissions or statements of a defendant to a private citizen infringe no constitutional guarantees. (*In re Eric J.* (1979) 25 Cal.3d 522, 527 [159 Cal.Rptr. 317, 601 P.2d 549].)

---

[4]We note that a related, though not identical, question is now before the Supreme Court in *People* v. *Crowson* (1983) 33 Cal.3d 623 [190 Cal.Rptr. 165, 660 P.2d.389].

■ Finally, appellants contend that the court abused its discretion when it refused to excise those portions of the taped conversation in which they expressed concern about possible probation revocations. Appellants contend that this evidence was of limited probative value, and was unduly prejudicial, particularly because the jury was thereby permitted to speculate about the nature of their prior offenses.

■ Evidence of crimes other than those for which a defendant is being tried is admissible if relevant to prove a material fact, such as identity. (Evid. Code, § 1101, subd. (b).) However, because such evidence is prejudicial, its admissibility must be scrutinized carefully. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 314 [165 Cal.Rptr. 289, 611 P.2d 883].) Even if relevant, if evidence of other crimes is merely cumulative with respect to other evidence which the People may use to prove the same issue, it is excluded under a rule of necessity. (*Id.*, at p. 318.) ■ Here the court stated that appellants' references to their status as probationers tended to establish their consciousness of guilt, from which their identity as the burglars could be inferred. However, the evidence about how appellants attempted to flee and appellants' own remarks about what story they should give to police also tended to establish consciousness of guilt. Accordingly, their remarks alluding to their prior offenses were cumulative and should have been excluded. Nevertheless, in light of the overwhelming evidence against appellants, there is no reasonable probability that the jury would have reached a different result if the error in admitting this evidence had not occurred. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

*Admissibility of the Prior Conviction for Impeachment*

■ Appellant Williams contends the trial court erred when it ruled that if he testified, he could be impeached with his 1976 robbery conviction.[5]

While Evidence Code section 788 authorizes the use of a prior felony conviction to impeach, such evidence must be excluded if its probative value is outweighed by the risk of undue prejudice. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1].) In deciding whether to admit a prior, the trial court must first determine

---

[5]The court also ruled that appellant's 1976 and 1978 burglary priors were inadmissible.

its probative value by assessing both the relevance of the prior to honesty and veracity, and its remoteness. When weighing these factors against the possible prejudice, the court must consider the similarity of the offense to the crime charged, and the adverse effect on the administration of justice should the defendant elect not to testify for fear of impeachment. (*People v. Fries* (1979) 24 Cal.3d 222, 226-228 [155 Cal.Rptr. 194, 594 P.2d 19].)

Appellant's four-year-old robbery prior was recent enough to be probative (see *People v. McFarland* (1980) 108 Cal.App.3d 211, 215-216 [166 Cal.Rptr. 429]), and a robbery prior has some relevance to credibility. (*Fries, supra*, 24 Cal.3d at p. 229.) The crime was not identical to that charged. (Cf. *id.*, at pp. 230-231.) While appellant did not testify, the jury was not deprived of hearing his defense, as appellant Stone testified that he alone committed the burglary, and that appellant Williams did not participate. We find no abuse of discretion.

### Amendment of the Information

Appellants were initially charged with burglary, in that they entered Heath's dwelling with the intent to commit theft. Among their recorded remarks was the phrase, "[unintelligible] an' we gonna get money or get crack." During the prosecution's case, a sheriff's deputy testified that "get crack" could have referred to sexual intercourse. At the conclusion of the People's case, the prosecutor moved to amend the information to add, "with intent to commit theft *or other felony*," on the ground that the implication of the remark was that appellants may have intended to commit some kind of sexual assault. The trial court permitted the amendment, after concluding that appellants would not be prejudiced thereby. Appellants now contend that the trial court erred, but fail to establish that permitting the amendment impaired their ability to defend against the charges. Penal Code section 1009 authorized the court to allow such an amendment, and no abuse of the court's discretion has been established.

### Prosecutor's Misconduct

Appellants contend the prosecutor committed misconduct during argument by (1) stating that appellants had "terrified" Linda Heath,

thereby arousing the passion and prejudice of the jury; (2) mentioned appellant Williams' decision not to testify; and (3) referred to the penalty which appellants might receive.

Appellants did not object at trial to the first two comments. Assuming only for the sake of argument that these comments amounted to misconduct, any adverse impact could have been cured by a timely objection and admonition. Accordingly, appellants' failure to object is deemed a waiver of their right to challenge these comments on appeal. (*People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].) Furthermore, the first comment was clearly not misconduct. As to the second comment, the district attorney told the jury not to speculate as to why Williams did not testify. The comment was a proper recourse to defense counsel's discussion of why Williams failed to testify.[6]

The prosecutor's reference to penalty was improper. However, the court admonished the jury to disregard that remark, and we presume the jury heeded that instruction. (See *People* v. *Romo* (1975) 14 Cal.3d 189, 195 [121 Cal.Rptr. 111, 534 P.2d 1015]; *People* v. *Hernandez* (1970) 11 Cal.App.3d 481, 491 [89 Cal.Rptr. 766].)

### Ineffectiveness of Counsel

Appellants both contend that they were denied effective assistance of counsel. We disagree. Appellant Stone contends his counsel failed to discuss the case with him prior to trial. However, appellant omits significant facts. He raised this allegation below and requested another attorney; the court questioned trial counsel, who denied the allegation, and appellant eventually withdrew his request. Appellant Williams complains that his lawyer conceded in closing argument that another burglar may have been in Heath's apartment with Stone. However, appellant takes that comment out of context. Counsel acknowledged the testimony that two men climbed out the window, but then argued that Williams was misidentified as one of the two. Appellants have failed to establish that any acts or omissions of counsel deprived them of any potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

---

[6]We note that the trial court did instruct the jury that it could not speculate as to why appellant did not testify.

Judgments are affirmed.

White, P. J., and Barry-Deal, J., concurred.