Office of the Attorney General · State of Texas



April 12, 2000

The Honorable Michael A. Sheppard
District Attorney
24th Judicial District
307 North Gonzales
Cuero, Texas 77954

Opinion No. JC-0208

Re: Whether a police officer who secretly records or broadcasts a suspect's conversation in a police car violates section 16.02 of the Penal Code (RQ-0145-JC)

Dear Mr. Sheppard:

You have requested our opinion as to whether a police officer who secretly records or broadcasts a suspect's conversation in a police car violates section 16.02 of the Penal Code. For reasons that will appear below, we conclude that the officer does not.

You provide the following context for your request:

> Increasingly, police agencies are equipping their vehicles with dash-mounted video equipment for video taping criminal scenes that occur in front of the police car. These systems typically have the ability to also record conversations within the car. Some can broadcast any conversations that occur within the patrol car so that the officer, several yards away, can hear on his radio what is being said by the occupants. This equipment can be quietly turned on, so that the occupants of the car are unaware that everything they say is being recorded or broadcasted. Additionally, some agencies have opted to simply equip their patrol cars with a hidden tape or mini-disc recorder, which also has the ability to secretly record any conversations that take place in the police car.

> A tactic which is evolving, is to place two or three subjects in the back seat of a patrol car equipped with such a radio/recording device, and then to find some excuse to leave the subjects alone in the patrol car, after quietly turning on the device. This is most commonly used during road-side searches of vehicles.

> This tactic frequently results in recording conversations in which the subjects discuss where they have hidden contraband in

their vehicle, as well as other statements pointing to their knowing participation in a criminal enterprise. Besides being useful in locating hidden contraband, this evidence can also be used in court to prove criminal knowledge and intent.

The radio broadcasting of the subjects' conversation can tip-off the searching officer to any plans the subjects in his patrol car may have to attack him when he returns to the patrol car or the presence of weapons they might have on them. Sometimes drug smuggling operations consist of a vehicle hauling the contraband, with a second vehicle following behind, with armed guards or "enforcers." The secret broadcasting of the search subjects' conversations will sometimes reveal this information. In any of these scenarios the broadcast of the subjects' conversation provides significant additional safety to the listening officer.

Letter from Honorable Michael A. Sheppard, District Attorney, 24th Judicial District, to Opinion Committee, Office of the Attorney General, at 1-2 (Nov. 8, 1999) (on file with Opinion Committee).

Section 16.02 of the Penal Code provides, in relevant part:

(a) In this section, "covert entry," "communication common carrier," "contents," "electronic, mechanical, or other device," "intercept," "investigative or law enforcement officer," "oral communication," "electronic communication," "readily accessible to the general public," and "wire communication" have the meanings given those terms in Article 18.20, Code of Criminal Procedure.

(b) A person commits an offense if he:

(1) intentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept a wire, oral, or electronic communication.

TEX. PEN. CODE ANN. § 16.02(a), (b)(1) (Vernon Supp. 2000). "Oral communication" is defined in article 18.20 of the Code of Criminal Procedure, as "an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation." TEX. CODE CRIM. PROC. ANN. art. 18.20, § 1(2) (Vernon Supp. 2000). We may assume that, under the circumstances you describe, the suspect exhibits "an expectation that the communication is not subject to interception." Thus, the key inquiry is whether the suspect's expectation occurs "under circumstances justifying that expectation."

No Texas court has construed the relevant provision of the Penal Code, but numerous other courts, both state and federal, have considered similar statutes. As long ago as 1972, a court in California held that, where a defendant is seated in a police patrol car, "society is [not] prepared to recognize his expectation of privacy to have been reasonable." *People v. Todd*, 102 Cal. Rptr. 539, 541 (Cal. Ct. App. 1972). Prior to July, 1984, at least two other state courts reached a similar conclusion. *See State v. Lucero*, 628 P.2d 696, 698 (N.M. Ct. App. 1981) ("When they sat in Officer Heshley's patrol car, these suspects had no reasonable expectation of privacy."); *People v. Marland*, 355 N.W.2d 378, 384 (Mich. Ct. App. 1984) (suspects had no reasonable right to expect privacy in the back seat of a police car). Then, in July 1984, the United States Supreme Court held that a prison inmate has no reasonable expectation of privacy in his prison cell entitling him to Fourth Amendment protection. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell[,] and . . . accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell.").

Subsequent to *Palmer*, both state and federal courts have consistently held that a suspect seated in a police car does not have an expectation of privacy "that society is willing to recognize as reasonable." *United States v. McKinnon*, 985 F.2d 525, 527 (11th Cir. 1993). In *McKinnon*, the defendant argued that "the front seat of a police car is equivalent to the officer's office, but the back seat is the office of the arrestee." *Id.* The government countered that "the back seat of a police car is equivalent to a jail." *Id.* The court found that, whether pre-arrest or post-arrest, a person does "not have a reasonable or justifiable expectation of privacy for conversations he held while seated in the back seat area of a police car." *Id.* at 528. In *United States v. Clark*, 22 F.3d 799 (8th Cir. 1994), another federal court, likewise holding that a suspect has no reasonable expectation of privacy while seated in a police car, provided the following rationale:

> A marked police car is owned and operated by the state for the express purpose of ferreting out crime. It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects. The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. A police car is not the kind of public place, like a phone booth where a person should be able to reasonably expect that his conversation will not be monitored. In other words, allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society.

*Clark*, 22 F.3d at 801-02.

State court decisions subsequent to *Palmer* reach the same conclusion. *See, e.g., State v. Hussey*, 469 So. 2d 346, 351 (La. Ct. App. 1985); *In re K.F. v. State*, 797 P.2d 1006 (Okla. Crim.

App. 1990). In *State v. Smith*, 641 So. 2d 849 (Fla. 1994), the defendant, Smith, was a passenger in a vehicle that was pulled over by an officer for swerving erratically. The driver consented to the officer's request to search the car, and "for safety purposes, the officer requested the driver and Smith to sit in the back seat of the police car during the search of the car." *Smith*, 641 So. 2d at 850. The officer found cocaine in the glove compartment and arrested Smith and the driver. During the search, the officer secretly taped a conversation between Smith and the driver that "included a discussion concerning whether the officer had found the package in the car." *Id.* Smith moved to suppress the tape recording on the basis of a Florida statute with language virtually identical to that of section 16.02. *See id.* at 850-51 n.1. The court held that Smith had "no reasonable expectation of privacy [while seated] in a police car." *Id.* at 852. The court concluded that the reasonableness of the expectation does not depend upon the status of the person engaging in the conversation. *See id.* at 852.

In our opinion, these cases are persuasive, and they inextricably point to the conclusion that a statement made by a person seated in a police car does not occur under circumstances justifying the expectation of privacy. Consequently, such a statement is not an "oral communication" as defined in article 18.20 of the Code of Criminal Procedure. As a result, a police officer who secretly records or broadcasts the conversation of an individual seated in a police vehicle does not violate section 16.02 of the Penal Code.

## S U M M A R Y

A police officer who secretly records or broadcasts the conversation of a person seated in a police vehicle does not violate section 16.02 of the Penal Code.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee